UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRITTON BRYANT, *individually and on behalf of all others similarly situated,*<br><br>Plaintiff<br><br>v.<br><br>FIDELITY INVESTMENTS a/k/a FIDELITY BROKERAGE SERVICES, LLC,<br><br>Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Britton Bryant ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned counsel, brings this action against Fidelity Investments a/k/a Fidelity Brokerage Services, LLC ("Fidelity" or "Defendant"). Plaintiff alleges as follows upon personal knowledge of the facts pertaining to himself, and on information and belief as to all other matters.

## I. SUMMARY OF THE ACTION

1. Fidelity informed attorney generals in several states on or about October 9, 2024, that between August 17, 2024 and August 19, 2024, its computer systems were hacked by a third party, who established two customer accounts which they used to obtain images of documents pertaining to Fidelity customers from an internal database. The hackers intentionally attacked Fidelity to unlawfully access the highly sensitive, confidential, and personal information of over 77,000 Fidelity customers. Fidelity acknowledged that this data breach (the "Fidelity Data Breach") exposed and enabled the hackers to access the following personally identifiable information of Fidelity customers: names; Social Security numbers; financial account data; and driver's license information (hereinafter, the "PII").

2. Despite identifying the Fidelity Data Breach internally as early as August 19, 2024, Defendant waited almost two months before it began notifying consumers commencing on October 9, 2024, that the Fidelity Data Breach had occurred and that the sensitive PII of 77,000 consumers was exposed.

3. Plaintiff brings this action on behalf of himself and a class of consumers defined herein (the "Class") as the members of which (the "Class Members") whose PII was disclosed to unauthorized third persons as a result of the Fidelity Data Breach.

## II. PARTIES

4. Plaintiff Britton Bryant is a citizen and resident of South Carolina and is a Fidelity client. He learned of the Fidelity Data Breach through a notice he received from Fidelity in October 2024. As a result of the Fidelity Data Breach, Plaintiff Bryant has taken steps to secure his PII and implemented a freeze on his credit with national credit reporting agencies. As a result of the Fidelity Data Breach, Plaintiff Bryant received notice from Credit One that his Social Security number was compromised.

5. Defendant Fidelity is one of the largest investment firms in the United States. It has its principal place of business at 245 Summer Street, Boston, Massachusetts 02210. Fidelity provides, among other things, "financial planning, advice, and educational resources to help investors – including young and first-time investors."

## III. JURISDICTION AND VENUE

6. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy, exclusive of interest and costs, exceeds the sum value of $5,000,000.00, consists of putative class membership of greater than 100 members, and is a class action in which some of the members of the Class, including the Plaintiff, are citizens of states different than that of Defendant.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is authorized to conduct business within this District, is headquartered in this District, has

intentionally availed itself of the laws in this District, and conducts substantial business, including acts underlying the allegations of this complaint, in this District.

## IV. FACTUAL ALLEGATIONS

### A. Fidelity Investments – A Provider of Financial Investment Services

8. Fidelity Investments provides financial investment services for customers domestically and internationally. Fidelity's procedures and protocols require that its customers provide it with confidential, sensitive, and private information that includes their name and address; date of birth; highly confidential Social Security Numbers; and certain other information that may be necessary or required for the receipt of financial investment services.

9. From the outset of each customer's and Class Member's receipt of financial investment services from Fidelity, the Company represents and assures them that "Fidelity recognizes the importance of maintaining personal information about you and when we use it, we do so with respect for your privacy."[1]

10. In a further effort to assure customers that Fidelity is doing all that is necessary and required to protect the confidentiality of their personal information, Defendant purportedly adopted protocols and practices that it represents to customers are followed with respect to their Private Information (the "Privacy Policy").[2]

11. Fidelity represents in its Privacy Policy that it obtains and uses personal information to: service, maintain and protect its customers' accounts; process transactions in those accounts; respond to inquiries from customers or their representatives; develop, offer and deliver products or services; operate and manage their business; and fulfill legal and regulatory requirements. "Fidelity collects public and non-public personal information from customers and visitors from various sources."[3]

---

[1] *Privacy Policy*, FIDELITY INVESTMENTS, https://www.fidelity.com/privacy-policy (last accessed October 18, 2024).
[2] *Id.*
[3] *Id.*

12. Fidelity states that it protects its customers' information by "implement[ing] and maintain[ing] physical, administrative, technical and organizational measures designed to protect personal information and we regularly adapt these controls to respond to changing requirements and advances in technology." At Fidelity, we restrict access to personal information to those who require it to develop, support, offer and deliver products and services to you and to operate our business."[4] It further represents in its Privacy Policy that "[w]hen [customers] interact with us by using our websites, online services or applications (including mobile apps) that are owned and controlled by Fidelity Investments ('our digital offerings'), or via electronic communications, Fidelity manages personal information in accordance with all of the practices and safeguards described in this policy."[5]

**B. The Data Breach and Fidelity's Failure to Timely Disclose Same**

13. As Fidelity admits, between August 17, 2024 and August 19, 2024, an unknown third-party breached its IT system, "using two customer accounts they had recently established,"[6] enabling that party or entity to access the PII of over 77,000 Class Members.

14. Fidelity was a soft target for cyber thieves who recognized that as a financial investment company it collects, maintains and even creates PII. The cyber-attack by a third-party "retrieved certain documents related to Fidelity customers and other individuals by submitting fraudulent requests to an internal database containing images of those documents."[7] Those images of documents included, *inter alia*, the PII of customers such as Plaintiff and Class Members.

[4] *Id.*
[5] *Id.*
[6] *Data Breach Notifications: Fidelity Investments*, OFFICE OF THE MAINE ATTORNEY GENERAL, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/a4103ed8-3176-4ca0-99e6-4a320f1c3b32.html (last accessed October 18, 2024).
[7] *Fidelity breach exposed the personal data of 77,000 customers - what to do if you're affected*, ZDNET, https://www.zdnet.com/article/fidelity-breach-exposed-personal-data-of-77000-customers-what-to-do-if-youre-affected/ (last accessed October 18, 2024).

15. According to Fidelity, cyber criminals accessed customer personal information that included names, Social Security numbers, and driver's licenses.[8]

16. Despite knowing of the Fidelity Data Breach incident as early as August 19, 2024, and despite its obligations to provide adequate and timely notice so that affected persons can take precautions and mitigate potential losses and damages, Fidelity belatedly filed notices with several states' attorney general offices regarding the Fidelity Data Breach on October 9, 2024, almost two months after the breach.[9]

17. Fidelity did not provide any notice to Plaintiff or Class Members at any time prior to October 9, 2024.

18. The type of information that was secured by the cyber thieves reflects that this cyber-attack was targeted against Fidelity, given that it is a financial investment company.

19. The Fidelity Data Breach was clearly foreseeable to Defendant. It is well known, and is further alleged below, that cyber-attacks against financial services companies such as Defendant are targeted and frequent. Such data breaches against the financial sector have become widespread.

20. Given the fact that this was a targeted data breach against a financial services company, it was foreseeable to Fidelity that the compromised PII could be used by hackers and cyber criminals in a variety of different ways. For example, PII can be used to identify or trace an individual's identity including the names, Social Security numbers and driver's license information either alone or in combination with other personal or identifying information that is connected or linked to an individual which could include one's birthplace, birth date, and mother's maiden name. Cyber criminals, who now possess class members PII, can readily obtain their tax

---

8 *Fidelity says data breach exposed personal data of 77,000 customers*, TECHCRUNCH, https://techcrunch.com/2024/10/10/fidelity-says-data-breach-exposed-personal-data-of-77000-customers/ (last accessed October 18, 2024).

9 *Fidelity Data Breach Exposed Customer Information,* SECURITYWEEK, https://www.securityweek.com/fidelity-investments-data-breach-impacts-77000-customers/ (last accessed October 18, 2024).

returns or open fraudulent credit card accounts in their names. Fidelity was conscious of and could foresee the risk of data breaches given its position as a financial investment company and the well documented and reported data breaches that have occurred throughout the financial industry over a number of years, with increasing frequency.

21. The increased frequency of data breaches has even captured the attention of the Federal Bureau of Investigation and the U.S. Secret Service. Both of whom have issued warnings to potential targets.

22. Fidelity's delay further prejudiced consumers who could have been taking affirmative steps to protect themselves from identity theft during that period of delay, and effectively prevented consumers from taking steps to better or more timely insulate themselves from the risk of harm caused by misuse of their PII by hackers.

## V. CLASS ALLEGATIONS

23. Pursuant to Fed. R. Civ. P. 23(b)(1), (b)(2), (b)(3), and (c)(4), Plaintiff asserts common law claims for negligence (Count I), negligence per se (Count II), breach of implied contract (Count III), breach of the implied covenant of good faith and fair dealing (Count IV), negligent misrepresentation (Count V), invasion of privacy (Count VI), breach of fiduciary duty (Count VII) and unjust enrichment (Count VIII), on behalf of the following Class (collectively "the Class"), defined as follows:

> **Nationwide Class**: All residents of the United States who received notice that their PII was accessed or otherwise compromised as a result of the Fidelity Data Breach.
>
> **Massachusetts Class:** All residents of the State of Massachusetts who received notice that their PII was accessed or otherwise compromised as a result of the Fidelity Data Breach.

Members of the Nationwide Class and the Massachusetts Class are referred to herein collectively as "Class Members" or "Class."

24. Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant' officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

25. The proposed Class meets the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

26. **Numerosity**: Fidelity has acknowledged that the exact number of members of the Class is 70,099, making joinder of each individual impracticable. The identifies of the members of the Class will be easily identified through Defendant's records.

27. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

a) Whether Defendant failed to adequately safeguard Plaintiff's and the Class Members' PII;

b) Whether Defendant failed to protect Plaintiff's and the Class Members' PII, as promised;

c) Whether Defendant's computer system systems and data security practices used to protect Plaintiff's and the Class Members' PII violated federal, state and local laws, or Defendant's duties;

d) Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard Plaintiff's and the Class Members' PII properly and/or as promised;

e) Whether Defendant violated the consumer protection statutes and data breach notification statutes applicable to Plaintiff and each of the Class;

f) Whether Defendant failed to notify Plaintiff and members of the Class about the Fidelity Data Breach as soon as practical and without delay after the Fidelity Data Breach was discovered;

g) Whether Defendant acted negligently in failing to safeguard Plaintiff's and the Class Members' PII;

h) Whether Defendant entered into contracts with Plaintiff and the Class Members that included contract terms requiring Defendant to protect the confidentiality of Plaintiff's PII and have reasonable security measures;

i) Whether Defendant' conduct described herein constitutes a breach of its contracts with Plaintiff and the members of each of the Class;

j) Whether Defendant should retain the money paid by Plaintiff and members of each of the Class to protect their PII;

k) Whether Plaintiff and the Class Members are entitled to damages as a result of Defendant's wrongful conduct;

l) Whether Plaintiff and the Class Members are entitled to restitution as a result of Defendant's wrongful conduct;

m) What equitable relief is appropriate to redress Defendant's wrongful conduct; and

n) What injunctive relief is appropriate to redress the imminent and currently ongoing harm faced by Class Members.

28. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and the Class Members sustained damages as a result of Defendant's uniform wrongful conduct during transactions with them.

29. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and there are no defenses

unique to Plaintiff. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the members of the proposed Class and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

30. **Risks of Prosecuting Separate Actions**: This case is appropriate for certification because prosecution of separate actions would risk either inconsistent adjudications which would establish incompatible standards of conduct for the Defendant or would be dispositive of the interests of members of the proposed Class. Furthermore, the Fidelity breached data center(s) still exists, and is still vulnerable to future attacks – one standard of conduct is needed to ensure the future safety of the Fidelity database.

31. **Policies Generally Applicable to the Class**: This case is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Plaintiff and proposed Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct towards members of the Class and making final injunctive relief appropriate with respect to the proposed Class as a whole. Defendant's practices challenged herein apply to and affect the members of the Class uniformly, and Plaintiff's challenge to those practices hinges on Defendant's conduct with respect to the proposed Class as a whole, not on individual facts or law applicable only to Plaintiff.

32. **Superiority**: This case is also appropriate for certification because class proceedings are superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and the members of the Class. The injuries suffered by each individual member of the Class are relatively small in comparison to the burden and expense of individual prosecution of the litigation necessitated by Defendant's conduct. Absent a class action, it would be virtually impossible for individual members of the Class to obtain effective relief from Defendant. Even if Class Members could sustain individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties, including the Court, and would require duplicative consideration of the common legal and factual issues presented here. By contrast, a class action presents far fewer management difficulties and provides

the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court.

## VI. CAUSES OF ACTION

### COUNT I – NEGLIGENCE

33. Plaintiff incorporates the above allegations by reference as fully set forth herein.

34. Defendant required Plaintiff and Class Members to submit PII in order to obtain financial investment services.

35. Defendant knew, or should have known, of the risks inherent in collecting and storing the PII of Plaintiff and Class Members.

36. As described above, Fidelity owed duties of care to Plaintiff and Class Members whose PII had been entrusted with Fidelity.

37. Defendant breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

38. Defendant acted with wanton disregard for the security of Plaintiff's and Class Members' PII. Defendant knew or should have known that Fidelity had inadequate computer systems and data security practices to safeguard such information, and Defendant knew or should have known that hackers were attempting to access the PII in financial service companies' databases, such as Fidelity's.

39. A "special relationship" exists between Defendant and the Plaintiff and Class Members. Fidelity entered into a "special relationship" with Plaintiff and Class Members because Fidelity collected the PII of Plaintiff and the Class Members and stored it in Fidelity's database – information that Plaintiff and the Class Members had been required to provide to Fidelity.

40. But for Defendant's wrongful and negligent breach of the duties owed to Plaintiff and the Class Members, Plaintiff and the Class Members would not have been injured.

41. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known it was failing to meet its duties, and that Defendant's breach of such duties would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their PII.

42. As a direct and proximate result of Defendant' negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

**COUNT II – NEGLIGENCE *PER SE***

43. Plaintiff incorporates the above allegations by reference as fully set forth herein.

44. Pursuant to the Federal Trade Commission Act (15 U.S.C. §45) ("FTC Act"), Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

45. Pursuant to the FTC Act, Defendant had a duty to implement reasonable safeguards to protect Plaintiff's and Class Members' PII.

46. Defendant breached its duties to Plaintiff and Class Members under the FTC Act, by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

47. Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se*.

48. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

49. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties, and that Defendant's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their PII.

50. As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

**COUNT III – BREACH OF IMPLIED CONTRACT**

51. Plaintiff incorporates the above allegations by reference as fully set forth herein.

52. Plaintiff and Class members entered into implied contracts with Fidelity when they obtained financial investment services from Fidelity, for which they were required to provide their PII. The PII provided by Class Members to Fidelity was governed by and subject to Fidelity's privacy duties and policies.

53. Fidelity agreed to safeguard and protect the PII of Plaintiff and Class Members and to timely and accurately notify them if their PII was breached or otherwise compromised.

54. Plaintiff and Class members entered into the implied contracts with the reasonable expectation that Defendant's data security practices and policies were reasonable and consistent with industry standards. Plaintiff and Class members believed that Fidelity would use part of the monies paid to Fidelity under the implied contracts to fund adequate and reasonable data security practices.

55. Plaintiff and Class members would not have obtained financial investment services from Fidelity or provided and entrusted their PII to Defendant in the absence of the implied contract or implied terms between them and Fidelity. The safeguarding of the PII of Plaintiff and Class Members and prompt and sufficient notification of a breach was critical to realize the intent of the parties.

56. Plaintiff and Class Members fully performed their obligations under the implied contracts with Fidelity.

57. Fidelity breached its implied contracts with Plaintiff and Class members to protect their PII when it: (1) failed to have security protocols and measures in place to protect that information; (2) disclosed that information to unauthorized third parties; and (3) failed to provide timely and accurate notice that their PII was compromised as a result of the Fidelity Data Breach.

58. As a direct and proximate result of Fidelity's breaches of implied contract, Plaintiff and Class members sustained actual losses and damages as described in detail above and are also entitled to recover nominal damages.

## COUNT IV – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

59. Plaintiff incorporates the above allegations by reference as fully set forth herein.

60. Plaintiff and Class Members entered into valid, binding, and enforceable express or implied contracts with Fidelity, as alleged above.

61. These contracts were subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual obligations (both explicit and fairly implied) and not to impair the rights of the other parties to receive the rights, benefits, and reasonable expectations under the contracts. These included the implied covenants that Fidelity would act fairly and in good faith in carrying out its contractual obligations to take reasonable measures to protect plaintiff's PII and to comply with industry standards and federal and state laws and regulations.

62. A "special relationship" exists between Fidelity and the Plaintiff and Class Members. Fidelity entered into a "special relationship" with Plaintiff and Class Members who sought investment services from Fidelity and, in doing so, entrusted Fidelity, pursuant to its requirements, with their PII.

63. Despite this special relationship with Plaintiff, Fidelity did not act in good faith and with fair dealing to protect plaintiff's and Class Members' PII.

64. Plaintiff and Class Members performed all conditions, covenants, obligations, and promises owed to Fidelity.

65. Fidelity's failure to act in good faith in implementing the security measures required by the contracts denied Plaintiff and Class Members the full benefit of their bargain, and instead they received financial investment and finance-related services that were less valuable than what they paid for and less valuable than their reasonable expectations under the contracts. Plaintiff and Class Members were damaged in an amount at least equal to this overpayment.

66. Fidelity's failure to act in good faith in implementing the security measures required by the contracts also caused Plaintiff and Class Members to suffer actual damages

resulting from the theft of their PII and remain at imminent risk of suffering additional damages in the future.

67. Accordingly, Plaintiff and Class Members have been injured as a result of Fidelity's breach of the covenant of good faith and fair dealing and are entitled to damages and/or restitution in an amount to be proven at trial.

**COUNT V – NEGLIGENT MISREPRESENTATION**

68. Plaintiff incorporates the above allegations by reference as fully set forth herein.

69. Defendant negligently and recklessly misrepresented material facts, pertaining to the provision of financial investment services and its privacy policy to Plaintiff and Class Members by representing that it would maintain adequate data privacy and security practices and procedures to safeguard Plaintiff's and Class Members' PII from unauthorized disclosure, release, data breaches, and theft.

70. Defendant negligently and recklessly misrepresented material facts, pertaining to the provision of financial investment services, to Plaintiff and Class Members by representing that they did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Plaintiff's and Class Members' PII.

71. Because of the inadequacy of its data privacy and security practices, Defendant either knew or should have known that its representations were not true.

72. In reliance upon these misrepresentations, Plaintiff and Class Members obtained financial investment services from Defendant.

73. Had Plaintiff and Class Members, as reasonable persons, known of Defendant's inadequate data privacy and security practices, or that Defendant was failing to comply with the requirements of federal and state laws pertaining to the privacy and security of Plaintiff's and Class Members' PII, they would not have purchased financial investment services from Defendant, and would not have entrusted their PII to Defendant.

74. As a direct and proximate consequence of Defendant's negligent misrepresentations, Plaintiff and Class Members have suffered the injuries alleged above.

**COUNT VI – INVASION OF PRIVACY**

75. Plaintiff incorporates the above allegations by reference as fully set forth herein.

76. Plaintiff and Class Members had a reasonable expectation that Defendant would maintain the privacy of the PII collected and maintained by Fidelity.

77. Fidelity represented to Plaintiff and Class Members that it would not disclose their PII except in a handful of clearly defined and disclosed circumstances.

78. Despite representations to the contrary, Defendant failed to protect and safeguard the PII entrusted to Fidelity by Plaintiff and Class Members and in so doing intruded on the private and personal affairs of Plaintiff and Class Members in a manner highly offensive to a reasonable person; invaded the privacy of Plaintiff and Class Members by disclosing, without authorization, the PII of Plaintiff and Class Members, inconsistent with both the purpose of the collection of the PII and inconsistent with the uses of said PII previously disclosed to Plaintiff and Class Members; failed to provide sufficient security to protect the PII of Plaintiff and Class Members from unauthorized access; and enabled, by failing to protect it sufficiently, the disclosure of PII without the consent of Plaintiff or Class Members.

79. Fidelity knew, or acted with reckless disregard in not knowing, that the PII collected from Plaintiff and Class Members was, because of its nature, subject to a significant risk of unauthorized access.

80. Fidelity knew, or acted with reckless disregard in not knowing, that a reasonable person would consider its failure to adequately protect and secure their PII to be highly offensive.

81. Fidelity's disclosure of Plaintiff's and Class Members' PII without their consent constituted a violation of the privacy of Plaintiff and Class Members.

82. Fidelity's failure to provide sufficient security to protect the PII of Plaintiff and Class Members, leading to unauthorized access to that data by unauthorized parties, constituted the unlawful publication of that PII by Fidelity.

83. The PII disclosed in the Fidelity Data Breach was not generally known to the public and is not a matter of legitimate public concern.

84. Plaintiff and Class Members had a reasonable expectation in the privacy of the PII that they provided to Fidelity. That reasonable expectation was thwarted by Defendant's actions and inactions and Defendant's conduct constituted an invasion of Plaintiff's and Class Members' privacy.

85. As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial as well as restitution and injunctive relief.

## COUNT VII – BREACH OF FIDUCIARY DUTY

86. Plaintiff incorporates the above allegations by reference as fully set forth herein.

87. Defendant accepted the special confidence placed in it by Plaintiff and Class Members, even asserting that it "recognize[s] the importance of maintaining the privacy of personal information."

88. There was an understanding between the parties that Defendant would act for the benefit of Plaintiff and Class Members in preserving the confidentiality of the PII.

89. Defendant became the guardian of Plaintiff's and the Class Members' PII and accepted a fiduciary duty to act primarily for the benefit of its customers, including Plaintiff and the Class Members, including safeguarding Plaintiff's and the Class Members' PII.

90. Defendant's fiduciary duty to act for the benefit of Plaintiff and Class Members pertains as well to matters within the scope of its relationship with its clients, in particular, to keep secure the Private Information of those clients.

91. Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to (a) diligently discover, investigate, or give notice of the Data Breach in a reasonable and practicable period of time; (b) encrypt and otherwise protect the integrity of its computer systems containing Plaintiff's and the Class Members' Private Information; and (c) timely notify and/or warn them of the Fidelity Data Breach,

92. As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and/or Class Members have suffered and/or will suffer injury, including but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their PII; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Fidelity Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession; (vi) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (vii) the diminished value of Defendant's services they received.

93. As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

## COUNT VIII – UNJUST ENRICHMENT

94. Plaintiff incorporates the above allegations by reference as fully set forth herein.

95. Plaintiff and Class Members conferred a monetary benefit on Defendant in the form of payments made for the purchase of financial investment services.

96. Defendant appreciated or had knowledge of the benefits conferred upon it by Plaintiff and Class Members.

97. The payments for financial investment services that Plaintiff and Class Members paid (directly or indirectly) to Defendant should have been used by Defendant, in part, to pay for the administrative costs of reasonable data privacy and security practices and procedures.

98. As a result of Defendant's conduct, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in value between the financial investment services with the reasonable data privacy and security practices and procedures that Plaintiff and Class Members paid for, and the inadequate financial investment services without reasonable data privacy and security practices and procedures that they received.

99. Under principals of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members because Defendant failed to implement (or adequately implement) the data privacy and security practices and procedures that Plaintiff and Class Members paid for and that were otherwise mandated by federal, state and local laws, and industry standards.

100. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by Defendant.

101. A constructive trust should be imposed upon all unlawful or inequitable sums received by Defendant traceable to Plaintiff and Class Members.

102. Plaintiff and Class Members have no adequate remedy at law.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class Members, seek the following relief:

A. An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointed the undersigned as Class counsel, and finding that Plaintiff is the proper representatives of the Class requested herein.

B. Plaintiff requests injunctive relief. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class Members, including:

(i) an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

(ii) requiring Defendant to protect all data collected or received through the course of its business in accordance with federal, state and local laws, and best practices under industry standards;

(iii) requiring Defendant to design, maintain, and test its computer systems to ensure that PII in its possession is adequately secured and protected;

(iv) requiring Defendant to disclose any future data breaches in a timely and accurate manner;

(v) requiring Defendant to engage third-party security auditors as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant' systems on a periodic basis and ordering them to promptly correct any problems or issues detected by these auditors;

(vi) requiring Defendant to audit, test, and train its security personnel to run automated security monitoring, aggregating, filtering and reporting on log information in a unified manner;

(vii) requiring Defendant to implement multi-factor authentication requirements;

(viii) requiring Defendant's employees to change their passwords on a timely and regular basis, consistent with best practices;

(ix) requiring Defendant to encrypt all PII;

(x) requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

(xi) requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of its network is compromised, hackers cannot gain access to other portions of its systems;

(xii) requiring Defendant to purge, delete, and destroy in a reasonably secure and timely manner PII no longer necessary for its provision of services;

(xiii) requiring Defendant to conduct regular database scanning and securing checks;

(xiv) requiring Defendant to routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

(xv) requiring Defendant to provide lifetime credit monitoring and identity theft repair services to members of the Class; and

(xvi) requiring Defendant to educate all Class Members about the threats they face as a result of the loss of their PII to third parties, as well as steps Class Members must take to protect themselves.

C. Plaintiff also requests actual damages, punitive damages, treble damages, statutory damages, exemplary damages, equitable relief, restitution, disgorgement of profits, attorney's fees, statutory costs, and such other and further relief as is just and proper.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all triable issues.

Dated: October 18, 2024

Respectfully submitted,

/s/ *Michael C. Forrest*

Michael C. Forrest (BBO# 681401)
**MAZOW MCCULLOUGH PC**
10 Derby Square, 4th
Salem, MA 01970
Telephone: (978) 744-8000
Fax: (978) 744-8012
mcf@helpinginjured.com

**GEORGE FELDMAN MCDONALD, PLLC**
LORI G. FELDMAN*
102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520
Telephone: (917) 983-9321
lfeldman@4-justice.com
eservice@4-justice.com
**Pro Hac Vice Application forthcoming*
*Attorneys for Plaintiff and the Putative Class*